UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PATRICIA A. FRENTZEL, NANCY J. ANDERSON,
WENDY A. VALINT, EVAN J. VALINT, SCOTT
M. HENDERSON, CATHY A. HENDERSON,
and ERIK J. ANDERSON,

                             Plaintiffs,

-against-

RALPH M. MOHR, JEREMY J. ZELLNER, ERIE
COUNTY BOARD OF ELECTIONS, GEORGE M.
HAUSS, ROGER A. COOK, LETITIA JAMES,
KATHY HOCHUL, PETER S. KOSINSKI,
DOUGLAS A. KELLNER, ANDREW J. SPANO,
ANTHONY J. CASALE, and NEW YORK STATE
BOARD OF ELECTIONS,

                             Defendants.

**VERIFIED COMPLAINT**

Civil No.   23-854

---

        Plaintiffs, Patricia A. Frentzel, Nancy J. Anderson, Wendy A. Valint, Evan J.

Valint, Scott M. Henderson, Cathy A. Henderson, and Erik J. Anderson (collectively referred to

as "Plaintiffs"), by their attorneys, Rupp Pfalzgraf LLC, as and for their Verified Complaint

against the defendants, Ralph M. Mohr, Jeremy J. Zellner, the Erie County Board of Elections,

George M. Hauss, Roger A. Cook, Letitia James, Kathy Hochul, Peter S. Kosinski, Douglas A.

Kellner, Andrew J. Spano, Anthony J. Casale, and the New York State Board of Elections

(collectively referred to as "Defendants"), allege as follows:

## **NATURE OF ACTION**

        1.      The right to vote is a fundamental principle of our society, and all citizens

deserve an equal opportunity to have their voices heard.  To abridge this right would be to

undermine the core function of our democracy.

1

2.      The right to take part in the conduct of public affairs, including the right to vote and stand for election, is central to our democratic government.  Legitimate, honest and fair elections are a vital component of a community that protects human rights and promotes public trust in a political system elected to safeguard the rights of all citizens.

3.      As the right to vote is a fundamental right, it is given the highest degree of protection by the United States Constitution.

4.      Two years ago however, New York State enacted Chapter 480 of the New York Session Laws of the year 2021 which amended the state's election law, including Election Law § 8-308(4), to provide that, "A write in ballot cast in a party primary for a candidate not enrolled in such party shall be void and not counted."

5.      This is a radical and unconstitutional amendment to New York's Election Law as it disenfranchises any and all voters who cast a write-in ballot for a candidate solely on the basis that the candidate selected is not an enrolled member of the party.  This holds true even in instances in which the controlling party officers or authorizing committee have advanced another non-enrolled party member as a candidate for nomination.  In such instances, the statute elevates the selection of the party boss above the collective choice of the rank and file party members and denies the ability of the enrolled members who comprise such party to determine their party's nominee.

6.      Indeed, conducting an election - including a primary election for the nomination of general election candidates - and refusing to count votes solely on the basis that the candidate for whom the vote was cast is not the choice of the party elite, is an abridgement of the rights of voters guaranteed by the United States Constitution.

7.      Until the enactment of Chapter 480 of the New York Session Laws for the year 2021, there was no provision anywhere in New York's Election Law that restricted the ability of a voter to cast a write-in vote for anyone he deemed best suited in a primary election.

8.      Following the enactment of said chapter, the process of selecting party nominees by primary election continued, and the ability to seek to write-in a candidate other than that depicted on the printed ballot remained.  Chapter 480 of the New York Session Laws of the year 2021 however, restricted for whom a party member can vote.  The rank and file enrolled voters who comprise the party may no longer select and cast a ballot in a primary election for a non-party member who is not the non-party member chosen by the party bosses.

9.      The law creates what amounts to a sham democracy as witnessed in 1933 Germany which banned candidates of all but a single political party and severely restricted for whom a voter would be permitted to cast a ballot.

10.      In other words, Chapter 480 of the New York Session Laws of the year 2021 does what the United States Supreme Court held a state government could not do - it prohibits voters in a primary election from voting for a non-party candidate of their choice.  *See Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 215 (1986) stating "[w]ere the state to . . . provide that only Party members might be selected as the Party's chosen nominees for public office, such a prohibition of potential association with nonmembers would clearly infringe upon the rights of the Party's members under the First Amendment to organize with like-minded citizens in support of common political goals".

11.      Once the opportunity for a primary election to determine a party nominee for public office is established, an actual election where each primary voter's right to vote for the candidate of his or her choice, must be held.

12.     Voters have the right to a legitimate election where each and every one of their votes is counted, canvassed, and tallied.

13.     The election-related restriction at issue is a violation of a voter's rights under the United States Constitution, as the right to vote includes the right to vote for otherwise qualified candidates at a primary election regardless of that candidate's party-enrollment status.

14.     The United States Supreme Court has recognized that preventing a voter from voting in the primary election for a non-party candidate is an infringement upon a voter's constitutional rights. *Tashjian*, 479 U.S. at 215.

15.     Indeed, because a candidate's party affiliation has no bearing on whether he or she is qualified to be, for example, a town supervisor, county legislator, or town clerk, a voter has the right to vote (via casting a write-in ballot) for that candidate in the primary election and to have that vote counted. *Id*.

16.     Plaintiffs therefore, seek an order, declaration, and judgment that Chapter 480 of the New York State Session Laws of the year 2021 is unconstitutional, or unconstitutional as applied to Plaintiffs and all similarly situated voters, and further seek an order from the Court enjoining Defendants from enforcing this unconstitutional statute.

**PARTIES**

17.     Plaintiff, Patricia A. Frentzel, is an enrolled member of the Republican Party residing at 64 Settlers Row, Grand Island, New York.  Ms. Frentzel is the incumbent Town Clerk for the Town of Grand Island, having been first elected to said public office at the general election held November 4, 2003 and is a candidate for re-election to said public office at the upcoming general election to be held November 7, 2023.  Plaintiff, Patricia A. Frentzel received the highest number of votes cast, four times that of her nearest challenger, at the Working

Families primary election held on June 27, 2023 for the purpose of selecting the nominee of the Working Families Party in the upcoming general election for the public office of Grand Island Town Clerk.

18.     Plaintiff, Nancy J. Anderson, is a duly registered voter of the Working Families Party who resides at 87 Monica Road, Grand Island, New York.  Ms. Anderson voted in the Working Families primary election held on June 27, 2023, and she cast her write-in ballot for plaintiff, Patricia A. Frentzel at that primary election.  Ms. Anderson's vote was deemed void and therefore was not counted by defendant Erie County Board of Elections ("ECBOE") pursuant to the mandate set forth in New York Election Law § 8-308(4).

19.     Plaintiff, Wendy A. Valint, is a duly registered voter of the Working Families Party who resides at 3314 Wallace Drive, Grand Island, New York.  Ms. Valint voted in the Working Families primary election held on June 27, 2023, and she cast her write-in ballot for plaintiff, Patricia A. Frentzel at that primary election.  Ms. Valint's vote was deemed void and therefore was not counted by defendant ECBOE pursuant to the mandate set forth in New York Election Law § 8-308(4).

20.     Plaintiff, Evan J. Valint, is a duly registered voter of the Working Families Party who resides at 3314 Wallace Drive, Grand Island, New York.  Mr. Valint voted in the Working Families primary election held on June 27, 2023, and he cast his write-in ballot for plaintiff, Patricia A. Frentzel at that primary election.  Mr. Valint's vote was deemed void and therefore was not counted by defendant ECBOE pursuant to the mandate set forth in New York Election Law § 8-308(4).

21.     Plaintiff, Scott M. Henderson, is a duly registered voter of the Working Families Party who resides at 93 The Commons, Grand Island, New York.  Mr. Henderson voted

in the Working Families primary election held on June 27, 2023, and he cast his write-in ballot for plaintiff Patricia A. Frentzel during that primary election. Mr. Henderson's vote was deemed void, and therefore was not counted by the ECBOE pursuant to the mandate set forth in New York Election Law § 8-308(4).

22.     Plaintiff, Cathy A. Henderson, is a duly registered voter of the Working Families Party who resides at 93 The Commons, Grand Island, New York. Ms. Henderson voted in the Working Families primary election held on June 27, 2023, and she cast her write-in ballot for plaintiff Patricia A. Frentzel at that primary election. Ms. Henderson's vote was deemed void, and therefore was not counted by the ECBOE pursuant to the mandate set forth in New York Election Law § 8-308(4).

23.     Plaintiff, Erik J. Anderson, is a duly registered voter of the Working Families Party who resides at 2778 Baseline Road, Grand Island, New York. Mr. Anderson voted in the Working Families primary election held on June 27, 2023, and he cast his write in ballot for plaintiff, Patricia A. Frentzel during that primary election. Mr. Anderson's vote was deemed void, and therefore was not counted by the ECBOE pursuant to the mandate set forth in New York Election Law § 8-308(4).

24.     Defendant, Ralph M. Mohr, is a commissioner of the ECBOE and is being named as a defendant in his official capacity. Pursuant to state statute defendant Mohr is charged with administering elections and certifying the results of all primary and general elections conducted in Erie County, which includes the duty of counting, canvassing, and tallying the write-in votes cast in the Working Families Party primary election for the public office of Town Clerk for the Town of Grand Island.

25.     In addition, defendant Mohr is responsible for making and filing with the ECBOE tabulated statements signed by the members of such board, which must include the total number of votes cast for all of the candidates for nomination to each public office and the number of votes cast for each individual candidate for each public office.

26.     Defendant, Jeremy J. Zellner, is a commissioner of the ECBOE and is being named as a defendant in his official capacity.  Pursuant to state statute defendant Zellner is charged with administering elections and certifying the results of all primary and general elections conducted in Erie County, including the duty of counting, canvassing, and tallying the returns of the Working Families Party primary for the public office of Town Clerk for the Town of Grand Island.

27.     In addition, defendant Zellner is responsible for making and filing with the ECBOE tabulated statements signed by the members of such board, which must include the total number of votes cast for all of the candidates for nomination to each public office, as well as the number of votes cast for each individual candidate for each public office.

28.     Defendant, Erie County Borad of Elections (ECBOE), is a duly organized board existing by virtue of the laws of the State of New York and having its principal office located at 134 W Eagle Street, Buffalo, New York.

29.     Defendant, George M. Hauss, is an enrolled member of the Democratic Party who resides at 195 Hennepin Road, Grand Island, New York.  Defendant Hauss is a candidate for the public office of Town Clerk for the Town of Grand Island at the upcoming general election, and he filed a petition to appear on the Working Families Party line.

30.     Upon information and belief, defendant Hauss, however did not receive an authorization from the members of the controlling Working Families Party committee nor did he

7

file an acceptance.  Pursuant to New York Election Law § 6-120,[1] therefore, defendant Hauss's petition was invalid as he was not a member of the Working Families Party and did not receive an authorization from that party to appear on their line.

31.     By reason of the foregoing, defendant Hauss, failed to qualify as a candidate whose name could be lawfully printed on the official ballots at the Working Families Party primary election for the public office of Grand Island Town Clerk.  Notwithstanding, the name "George M. Hauss" was in fact printed on the official ballots used at the Working Families Party primary election conducted June 27, 2023 and defendant Hauss received three votes in the Working Families primary election.

32.     Defendant, Roger A. Cook, is an enrolled member of the Working Families Party who resides at 1515 W River Parkway, Grand Island, New York.  Defendant Cook received a single vote cast by write in at the Working Families primary election held on June 27, 2023 for the public office of Town Clerk of Grand Island.  Upon information and belief, defendant Cook never declared himself as candidate for said public office and has not filed an acceptance to become the nominee of the Working Families Party for the public office of Grand Island Town Clerk.

33.     Defendant, Letitia James, at all times relevant herein was and still is the Attorney General of the State of New York and is sued and named as a defendant in her official capacity.  Defendant James was and is acting under color of state law and pursuant to her authority as Attorney General at all times relevant.  The principal place of business for defendant James is the State Capital Building, Albany, New York.

---

[1] New York Election Law § 6-120 states that, in general, only candidates who are members of a given party may run in that party's primary. *See* Election Law § 6-120(1).  However, that statute permits a non-member to run in a party's primary if the non-member receives a "certificate of authorization" from the party committee. *Id.*, at § 6-120(3).

34.     Defendant, Kathy Hochul, at all times relevant herein was and still is the Governor of the State of New York and is sued and named as a defendant in her official capacity. Defendant Hochul was and is acting under color of state law and pursuant to her authority as Governor at all times relevant. The principal place of business for defendant Hochul is the State Capital Building, Albany, New York.

35.     Defendant, Peter S. Kosinski, is a Republican Commissioner of the New York State Board of Elections ("NYSBOE"), and is sued and named as a defendant in his official capacity. Defendant Kosinski did act and is acting under color of state law and pursuant to his authority as a Commissioner of the NYSBOE at all times relevant. The principal place of business for defendant Kosinski is 40 North Pearl Street, 5th Floor, Albany, New York.

36.     Defendant, Douglas A. Kellner, is a Democrat Commissioner of the NYSBOE, and is sued and named as a defendant in his official capacity. Defendant Kellner did act and is acting under color of state law and pursuant to his authority as Commissioner of the NYSBOE at all times relevant. The principal place of business for defendant Kellner is 40 North Pearl Street, 5th Floor, Albany, New York.

37.     Defendant, Andrew J. Spano, is a Democrat Commissioner of the NYSBOE, and is sued and named as a defendant in his official capacity. Defendant Spano did act and is acting under color of state law and pursuant to his authority as Commissioner of the NYSBOE at all times relevant. The principal place of business for defendant Spano is 40 North Pearl Street, 5th Floor, Albany, New York.

38.     Defendant, Anthony J. Casale, is a Republican Commissioner of the NYSBOE, and is sued and named as a defendant in his official capacity. Defendant Casale did act and is acting under color of state law and pursuant to his authority as Commissioner of the

NYSBOE at all times relevant.  The principal place of business for defendant Casale is 40 North Pearl Street, 5th Floor, Albany, New York.

39.     Defendant, New York State Board of Elections, is a duly organized board organized and existing by virtue of the laws of the State of New York with principal offices located at 40 North Pearl Street, 5th Floor, Albany, New York 12207.

## JURISDICTION AND VENUE

40.     This action implicates federal questions under the First and Fourteenth Amendments to the United States Constitution and pursuant to federal law, 28 U.S.C. §§ 1920, 2201, and 2202, as well as 42 U.S.C. §§ 1983 and 1988.

41.     This Court, therefore, has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

42.     This Court has authority to grant the requested injunctive relief pursuant to 28 U.S.C. § 1343(3), declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Plaintiffs' demand for costs, including reasonable attorneys' fees, pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988.

43.     Venue is proper in the Western District pursuant to 28 U.S.C. § 1391(b) because the events forming the basis of Plaintiffs' Verified Complaint occurred in this District.

## RELEVANT LEGISLATIVE HISTORY

44.     New York State has established a system of party nominations by primary election, and the State Legislature also has allowed voting by write-in for these primary elections.

45.     Election Law § 1-104(9) defines a "primary election" as "the mandated election at which enrolled members of a party may vote for the purpose of nominating party candidates and electing party officers."

46.     By far the most common method used today in New York for the selection of candidates to be voted for at a general election is the primary election.

47.     With only a few exceptions (such as the nomination of village candidates at a village caucus), the nomination of candidates for public office in New York State takes place at a primary election conducted and administered by a single or multiple county Boards of Elections.

48.     Until the enactment of Chapter 480 of New York Session Laws of the year 2021, there was no provision in the state's election laws that restricted the ability of a voter to cast a write-in vote for a non-party candidate in a primary election.

49.     In 2021, however, Governor Kathy Hochul signed into law Chapter 480 (Senate Bill 7191 and Assembly Bill 7761-A).

50.     This new law radically changed New York's primary election process, including the process of counting, canvassing, and tabulating votes cast in a primary election.

51.     Specifically, Chapter 480 of New York Session Laws of the year 2021 prohibits the counting, canvassing, and tallying of write-in votes cast in a primary for a candidate who is not an enrolled member of the party for which the primary is being held. *See* New York Election Law § 8-308(4).

52.     In addition, Chapter 480 of New York Session Laws of the year 2021 changed the wording of an opportunity-to-ballot petition to state that the purpose of such petition

was to seek an opportunity to write in the name or names of undesignated candidates who are members of the party. *See* New York Election Law § 6-164.

53.    Once such a petition is filed and found to be valid, the opportunity to write in a name of an undesignated candidate is extended to all qualified members of the party who choose to participate in the primary election, including those who have not signed the opportunity to ballot petition as well as those who are not aware of the party enrollment of the candidate for whom they intend to cast a ballot.

54.    Chapter 480 of New York Session Laws of the year 2021 thus serves to restrict the permissible choice of candidates of primary election voters and serves to disenfranchise such voters who may knowingly or unknowingly cast a write-in ballot for a candidate not enrolled in that party. Such disenfranchisement would occur even in the event, such as is the case here, where the only printed choice listed on the ballot and evident to the voter is another candidate not enrolled in that party.

55.    Prior to Chapter 480 of New York Session Laws of the year 2021 the candidate who received the highest number of votes won the primary and became the party's nominee, regardless of the candidate's party enrollment and his or her status as a write-in candidate.

56.    Specifically, prior to the 2021 amendment, the New York Election Law ensured that all votes cast in all elections, including primary elections, would be counted for the candidate for whom the vote was cast.

57.    Now write-in votes cast in primary elections for any candidate who is not enrolled in the same party as the voter casting a ballot, are in the language of § 8-308(4) "void and not counted."

58.     The sponsor's memo of State Senate Bill S.7191 of 2021, provided as justification for this change in the law as follows, "Parties should control access to their primary ballot.  Non-party members should not be permitted to participate in a primary without the party's authorization."

59.     In this manner, the legislative sponsor of the law has made the choice of the majority of the rank and file members of the party subservient to the selection of the party chairman or controlling committee, as it is only the party chairman or controlling committee who under state statute and party rule may issue an authorization to a candidate not enrolled in the party.

60.     Courts, however, consistently have held that the right to vote applies to primary elections in the same manner as it would apply to general elections.

61.     Moreover, the 2021 amendments to the New York Election Law contradict other sections of the law which mandate the candidate in a primary election who receives the highest number of votes becomes the party nominee.

62.     For example, New York Election Law § 9-200(1) states, "The candidate receiving the highest number of votes for nomination for public office . . . shall be the nominee of his party for such office . . . ."

63.     Chapter 480 of New York Session Laws of the year 2021 directly contradicts this requirement by forcing the invalidation of otherwise valid write-in votes causing, as is the case here, a candidate who has received four times the number of votes cast as the next highest challenger in a primary election, to not be selected as the party's nominee.

64.     For the reasons explained below, the new law and specifically the addition of Election Law § 8-308(4), infringes upon Plaintiffs' free speech rights, free association rights,

due process, equal protection rights, and the fundamental right to vote, all of which are guaranteed under the United States Constitution and deserve the highest protection by the Courts.

## **FACTUAL BACKGROUND RELEVANT TO PLAINTIFFS' CLAIMS**

65.     In the Town of Grand Island, the enrolled Democratic candidate for the position of Town Clerk, George M. Hauss, filed a petition to appear on the Working Families Party line.

66.     Defendant Hauss, however, did not receive an authorization from the Working Families Party to appear on the party line, nor did defendant Hauss file an acceptance of such party line.

67.     Pursuant to New York Election Law § 6-120, therefore, Hauss's designating petition to appear on the Working Families Party line was invalid as he was not a member of the party and he failed to receive an authorization from the Working Families Party.

68.     Around the same time as the filing of defendant Hauss's petition, a valid opportunity to ballot petition was filed with the ECBOE.

69.     That opportunity to ballot petition was signed by more than double the number of enrolled Working Family Party voters who reside in the Town of Grand Island required to validate such petition.  It requested the opportunity to write in the name of an undesignated candidate for the public office of Grand Island Town Clerk in the upcoming primary election.

70.     The filing of the opportunity to ballot petition created a primary election on the Working Families line for that public office.

71.     Ballots were then printed for the Working Families primary election, and despite the invalidity of defendant Hauss's designating petition, an employee for the ECBOE placed Hauss's name as the only candidate listed on the Town of Grand Island Working Families primary election ballot, along with a write-in box allowing voters the opportunity to write in the name of a different candidate.

72.     Upon information and belief, the ECBOE employee who improperly placed Hauss's name on the Working Families primary election ballot for Grand Island is an enrolled member of the same party as defendant Hauss.

73.     In the primary election held for the Working Families Party on June 27, 2023, defendant Hauss, who was the only name that appeared on the primary ballot, received just three votes.

74.     One write-in vote was cast for defendant Cook, who is an enrolled member of the Working Families Party.

75.     Twelve write-in votes were cast for plaintiff Frentzel, and therefore under the law prior to the enactment of Chapter 480 of New York Session Laws of the year 2021, plaintiff Frentzel would have been certified as the winner of the primary election for the Working Families Party and the party nominee for Grand Island Town Clerk at the upcoming general election to be held November 7, 2023.

76.     However, because plaintiff Frentzel is not an enrolled member of the Working Families Party, defendant ECBOE deemed the six write-in votes cast by plaintiff voters together with the six other write-in votes cast for plaintiff Frentzel to be void, and they therefore were not counted pursuant to the mandate set forth by New York Election Law § 8-308(4).

77.     In addition, because defendant Hauss is an enrolled member of the Democratic Party, and because he did not receive an authorization from the Working Families Party to appear on the party line or file an acceptance of the same, the ECBOE should deem all votes for defendant Hauss void and therefore such votes should not be counted.

78.     However, upon information and belief, the NYSBOE has recently advised defendant Zellner to certify defendant Hauss as the winner of the primary and the nominee of the Working Families Party in the upcoming general election.

79.     Election Law § 8-308(4) was enacted by the State of New York in 2021 and states as follows: "A write-in ballot cast in a party primary for a candidate not enrolled in such party shall be void and not counted."

80.     New York Election Law § 8-308(4) in effect prohibits enrolled voters of the Working Families Party who cast ballots at a primary election from selecting the candidate of their choice if that person is not enrolled in the same party, even if the candidate written in by the voter best represents that voter's views, morals, and philosophy.

81.     Thus, after the 2021 amendments to New York's Election Law, the only method by which a voter may vote for, and a non-enrolled member of the Working Families Party may appear on the Working Families line, is if they are "authorize[d]" under New York Election Law § 6-120(3).

82.     While New York Election Law § 6-120 provides that "the members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made" issue such an "authorization[,]" this is superseded in the statute by granting the power to the "committee" that is otherwise established under the rules of the party.

*See* New York Election Law § 6-120(3) ("unless the rules of the party provide for another committee").

83.     Article VIII of the state rules of the Working Families Party restricts the power to issue "authorization[s]" and provides that for "candidates for any county, city or local office, including offices of towns and villages" such "authorization[s]" shall be made by "the State Committee, or by the State Executive Committee when the State Committee is not convened."

84.     As the power to convene the State Committee under Article V of the Working Families Party rules (at times other than at reorganization) is discretionary with the State Chairman and the majority of the State Executive Committee, the Chairman and other members of the State Executive Committee can dictate their own authority.

85.     In effect, there is no mechanism for the rank and file members of the Working Families Party in a town or village to select a nominee of their choice without the acquiescence of the state party, and the authorization process is therefore controlled wholly by the "party bosses," or the State Chairman and Executive Committee for the Working Families Party.

86.     The combination of Election Law § 8-308(4) with Election Law § 6-120 renders the votes cast by the enrolled voters of a town, who desire their nominee to be a particular person other than the person anointed by the party bosses, "void and not counted."

87.     Primary voters are therefore forced to first determine whether the candidate they support is an actual enrolled member of the Working Families Party, and if their choice is not an enrolled member of the party, the voter who is eligible to vote at the primary election is prohibited by law from casting a valid vote for the candidate of their choice.

88.     If the voter persists in voting for their preferred candidate, Election Law § 8-308(4) ignores and gives no effect to that vote.

89.     Moreover, even if the voter's preferred candidate were a member of the party, the primary election can be rigged by the chairman or controlling party committee.

90.     Specifically, New York Election Law § 16-110 gives a party Chairman the ability to dis-enroll a candidate from the party, as well as the enrolled members of the party who support that candidate.  Using the power authorized by this statute, the party bosses have the ability to ensure the nomination of their preferred candidate and control the results of the primary election.

91.     The power of the so-called "party bosses" to control the results of a primary election is best evidenced by the unfinished attempt this year by the Erie County Conservative Party Chairman to dis-enroll a candidate of his party along with 67 other enrolled members of the Conservative Party perceived to support that candidate.

92.     Confronted with a primary challenge to the non-enrolled party candidate he authorized, the Erie County Conservative Party Chairman, on less than a week's notice to the voters he challenged, conducted a "kangaroo court" hearing in his office on Memorial Day weekend and issued a determination that every person so noticed should be dis-enrolled from the Conservative Party.

93.     It was only as a result of procedural errors made by the Erie County Conservative Party Chairman that his effort has to date not been completed.

94.     Although a prior constitutional challenge to Chapter 480 of New York Session Laws of the year 2021 was brought in state court and resulted in the Fourth Department upholding the statute in the decision *Kowal v. Mohr, et al.*, 216 A.D.3d 1472, 188 N.Y.S.3d 845

(4th Dept. 2023), it is important to remember that the challenge in that case was based upon a non-fact driven basis which led to several erroneous findings by the court.

95.     For example, in finding Election Law § 8-308(4) constitutional, the *Kowal* court found that "petitioners have no associational right to involve non-members in the nomination process of their parties."  188 N.Y.S.3d at 849.

96.     What was not presented to the *Kowal* court, however, was the fact that in Erie County, as is certainly the same across the entire state, the Working Families Party universally involves only non-members in the nomination process of their party.

97.     In fact, in Erie County, of the 58 total contests conducted last November with 19 candidates appearing on the Working Families line, not one candidate who appeared or was authorized to appear on the Working Families line was an enrolled member of the Working Families Party.

98.     Of the 146 total contests conducted in Erie County the year before, with 59 candidates appearing on the Working Families line, not one candidate who appeared or was authorized to appear on the Working Families line was an enrolled member of the Working Families Party.

99.     Of the 150 total contests to be conducted in Erie County this year, with 41 candidates appearing on the Working Families line, not one candidate who has been nominated or authorized to appear on the Working Families line is an enrolled member of the Working Families Party.

100.    Indeed, plaintiff Erik J. Anderson who has been an enrolled member of the Working Families Party for almost two decades has never been presented by his party with a candidate enrolled in the Working Families Party.  Instead in each of the fifteen general elections

and four primary elections of said party in which he participated, the controlling party committee has only authorized and supported non-enrolled members of the Working Families Party to appear as candidates on the Working Families Party line.

101.    Thus, by its actions, the Working Families Party already has exclusively involved non-members in the nomination process of the party.

102.    In further support of its rationale, the *Kowal* court noted "the statute does not preclude nonparty candidates from participating in the general election, which they may do by circulating an independent nominating petition pursuant to Election Law § 6-138, accepting designation by a party committee pursuant to § 6-120, or conducting a general election write-in campaign." 188 N.Y.S.3d at 849.

103.    This reason by the *Kowal* court, however, ignores voter participation at a primary election.

104.    For example, there is a significant disproportionate burden that these alternative routes to general election ballot access require, and these alternative routes completely exclude the rank and file voters who are members of the Working Families Party from participating in the nomination process to have the candidate of their choice placed on the general election ballot.

105.    Specifically, to gain access to the primary election for the public office of Grand Island Town Clerk, the signatures of only four enrolled members of the Working Families Party on Grand Island are required.

106.    By contrast, ballot access by means of the independent nominating petition process under New York Election Law § 6-138 requires 509 signatures of Grand Island

voters who have not previously signed a designating, opportunity to ballot, or independent nominating petition - over twelve thousand seven hundred percent more signatures.

107.   In addition, the second alternative method cited by the *Kowal* court of accepting the designation by a party committee to appear on the ballot pursuant to New York Election Law § 6-120 is not really an alternative method if there is no authorization of the candidate to accept.

108.   Finally, the third alternative method identified by the *Kowal* court, being to compete against candidates listed on the ballot by waging a general election write-in campaign is more expensive, requires greater media attention, requires greater organization, and is historically unsuccessful.

109.   In other words, these "alternatives" cited by the *Kowal* court hardly are "only a limited burden on voters' rights" as claimed by that court.  Rather, each alternative, except perhaps for the second method, which really is no alternative because it is controlled by forces other than the prospective candidate, removes the rank and file enrolled members of the Working Families Party from any primary election and nominating process.

110.   Finally, the *Kowal* court stated, "Moreover, petitioners have not been denied the right to vote."  188 N.Y.S.3d at 850.

111.   While it is true that plaintiffs and the other six Town of Grand Island Working Families Party voters who cast ballots for plaintiff Frentzel during the preceding primary election were not denied the ability to show up at a polling site to vote, they nonetheless have been denied the right to vote for the candidate of their choice, the right to have their vote canvassed and counted, and their right to have a nominee representing them on the November ballot who the majority of the primary voters believed best represents their views.

112.    The ramifications of Chapter 480 of New York Session Laws of the year 2021 acting in concert with New York Election Law §§ 6-120, and 16-110 are significant, and work to deny plaintiffs their rights under the United States Constitution.

113.    Rather, the decision of which candidate names are permitted to be on the ballot is vested in the sole decision of the controlling Working Families Party officers and bosses.

114.    The decision of who can be named as a party nominee in the November 2023 general election ballot effectively has been taken away from the vote of the rank and file members of the party.

115.    Graft, corruption, payoffs, promises of promotions, and public jobs will once again become the methods by which candidates my gain access to the primary election ballot for New York public office positions.

## COUNT I

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**
**(Freedom of Association)**
**42 U.S.C. § 1983**

116.    Plaintiffs re-allege and incorporate by reference the allegations contained in ¶¶ 1-115.

117.    Plaintiffs' right to freely associate with and cast write-in ballots for candidates of their choosing in primary elections is harmed by application of Chapter 480 of New York Session Laws of the year 2021, including specifically Election Law § 8-308(4), with no concomitant benefit to the State of New York, much less the narrowly tailored remedy for a compelling state interest that the United States Constitution requires.

118.    The provisions of Chapter 480 of New York Session Laws of the year 2021, including specifically Election Law § 8-308(4), allow for what amounts to a sham election where voters may vote but, depending on which candidates they vote for, their votes may not be counted.

119.    Chapter 480 of New York Session Laws of the year 2021, including specifically Election Law § 8-308(4), creates the appearance of a free and democratic election, but in reality the statute mandates that voters be disenfranchised solely because of their choice of a write-in candidate who happens to not be an enrolled member of the party.

120.    These provisions result in an abridgement of plaintiffs' free association rights under the First Amendment.

121.    Defendants have less restrictive means of preventing "party raiding," which is the supposed justification for this substantial infringement of plaintiffs' constitutional rights.

122.    The challenged election-related restriction does not serve any compelling or even significant government interest, nor is it narrowly tailored to achieve any legitimate state purpose.

123.    The challenged statute impermissibly infringes upon plaintiffs' freedom of association without serving any compelling or even significant government interest.

124.    In the absence of declaratory and injunctive relief, plaintiffs will be irreparably harmed.

125.    Plaintiffs have no adequate remedy at law for the violation of their constitutional rights.

## COUNT II

**Violation of the First and Fourteenth Amendments to the U.S. Constitution
(Violation of Freedom of Speech)
42 U.S.C. § 1983**

126.    Plaintiffs re-allege and incorporate by reference the allegations contained in ¶¶ 1-125.

127.    The Free Speech Clause of the First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."

128.    The Supreme Court has made clear that the protections afforded by the First Amendment are equally applicable against the states through the Fourteenth Amendment of the United States Constitution. *See Tashjian*, 479 U.S. at 214.

129.    It is without dispute that, due to the enactment of Chapter 480 of New York Session Laws of the year 2021, including specifically Election Law § 8-308(4), write-in votes cast in primary elections for candidates not enrolled in the same political party are, in the language of the new statute, "void and not counted."

130.    This is a radical and unconstitutional amendment to New York's Election Law as it disenfranchises any and all voters who cast a write-in ballot for a candidate not enrolled in the same political party.

131.    Defendants have less restrictive means of regulating so-called "party raiding," which include utilizing laws already in place to prevent this issue that are rarely used because the alleged problem defendants claim Election Law § 8-308(4) is intended to remedy is no real problem at all.

132.     The challenged election-related restriction does not serve any compelling or even significant government interest, nor is it narrowly tailored to achieve any legitimate state purpose.

133.     The challenged statute impermissibly infringes on plaintiffs' free speech rights guaranteed under the United States Constitution.

134.     In the absence of declaratory and injunctive relief, plaintiffs will be irreparably harmed.

135.     Plaintiffs have no adequate remedy at law for the violation of their constitutional rights.

## COUNT III

### Violation of the Fourteenth Amendment
### (Violation of Equal Protection Clause)
### 42 U.S.C. § 1983

136.     Plaintiffs re-allege and incorporate by reference the allegations contained in ¶¶ 1-135.

137.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees equal protection of the laws, which requires that the State not treat differently similarly situated people or pass laws that burden First or Fourteenth Amendment rights.

138.     Permitting some write-in primary votes to count based on the candidate who was voted for while other votes are invalidated because of they were cast for a different candidate violates a voter's and a candidate's rights under the Equal Protection Clause of the Fourteenth Amendment.

139.     As held by the Supreme Court, "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104 (2000).

140.     Votes cast for candidates who are otherwise qualified to seek the public office for which they are campaigning should be counted, canvassed, and tallied by the ECBOE, and other county boards of elections, in the same manner as all other votes cast by duly qualified voters.

141.     Chapter 480 of New York Session Laws of the year 2021, including specifically Election Law § 8-308(4), treats certain primary election write-in voters differently from other voters who cast write-in votes in the same primary election.

142.     If the canvassing of the write-in votes are treated differently due to the party affiliation of the candidate, then the candidate who received the write-in votes is being treated differently from the other candidates as well.

143.     This results in a violation of the voter's and candidate's rights under the Equal Protection Clause of the Fourteenth Amendment.

144.     Alternatively, the challenged state actions and statute cannot survive heightened scrutiny under the "hybrid-rights" theory the United States Supreme Court has recognized for purposes of Equal Protection analysis when, as here, multiple rights are violated by a purportedly neutral law.

145.     The challenged state actions and statute thus violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

146.     In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

147.    Plaintiffs have no adequate remedy at law.

## COUNT IV

**Violation of the Fourteenth Amendment
(Violation of Due Process Clause)
42 U.S.C. § 1983**

148.    Plaintiffs re-allege and incorporate by reference the allegations contained in ¶¶ 1-147.

149.    Under the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law."

150.    Although voters, such as Plaintiffs, are given the opportunity to write in a candidate's name in a primary, because they often don't know the party affiliation of the candidate for whom they are voting, they have no idea whether their vote will count or not.

151.    Few voters are aware of this change in New York's Election Law, which will result in their votes being invalidated, leaving them disenfranchised.

152.    The counting, tallying, and canvassing of write-in votes does not occur on primary day.  Rather, it occurs after primary day at the various county boards of elections.

153.    By the time of the actual disenfranchisement of the voter, the voter will be unable to change his or her vote, leaving that voter disenfranchised and without any alternative to have his or her vote counted.

154.    This change to New York's Election Law, and the canvassing, counting, or tallying of write-in votes cast at a primary election results in plaintiffs being denied their due process rights under the United States Constitution.

155.    The challenged government actions and orders thus violate the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution.

156.    In the absence of declaratory and injunctive relief, plaintiffs will be

irreparably harmed.

157.    Plaintiffs have no adequate remedy at law.


## COUNT V

**Violation of the First and Fourteenth Amendments**
**(Violation of the Fundamental Right to Vote)**
**42 U.S.C. § 1983**

158.    Plaintiffs re-allege and incorporate by reference the allegations contained

in ¶¶ 1-157.

159.    The right to vote is as protected and potentially even more protected than

any other similar protections found in the United States Constitution.

160.    This protection of the fundamental right to vote does not apply just to

general election, but extends to primary elections as well.

161.    A nomination is the method by which a party uses to select its candidates

for a general election ballot, and a primary is the most utilized method of nomination under New

York's Election Law.

162.    The right to vote includes not only the right to vote for public officers at

the general election, but it also includes the right to participate in the several methods established

by the law for the selection of candidates to be voted for.

163.    A restriction on the right to vote in a primary election is an abridgement

of a citizen's fundamental rights, and any statute which restrains freedom in nominating

candidates at the primary election restrains the voter's freedom in voting for candidates at the general election.

164.    Preventing the counting of a write-in vote for an otherwise qualified candidate merely because he or she is not an enrolled member of the party is an egregious abridgement of a voter's fundamental rights.

165.    It is undisputed that Chapter 480 of New York Session Laws of the year 2021, including specifically Election Law § 8-308(4), results in nullifying the votes for candidates merely because such candidate is not an enrolled member of the party for which the primary vote was cast.

166.    The challenged government actions and orders thus violate plaintiffs' fundamental right to vote under the First and Fourteenth Amendments to the United States Constitution.

167.    In the absence of declaratory and injunctive relief, plaintiffs will be irreparably harmed.

168.    Plaintiffs have no adequate remedy at law.

## DEMAND FOR JURY TRIAL

169.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief:

A.  An injunction restraining Defendants, and all those acting in concert with them, from

enforcing New York Election Law § 8-308(4), and an order directing the ECBOE to

count, canvass, and tally the write-in primary votes for Patricia A. Frentzel even though

she is not an enrolled member of the Working Families Party; or, in the alternative, an

injunction restraining defendants from certifying George M. Hauss as winner of the June

27, 2023 primary election for the Working Families Party and the party's nominee for the

public office of Grand Island Town Clerk;

B.  A declaratory judgment that New York Election Law § 8-308(4) is unconstitutional as a

matter of law, or, in the alternative, a declaratory judgment that the pending certification

of George M. Hauss as winner of the primary election for the Working Families Party

and the party's nominee for the public office of Grand Island Town Clerk is

unconstitutional as a matter of law; and

C.  An award of costs of this litigation, including reasonable attorneys' fees, pursuant to

42 U.S.C. § 1988.

D.  Such other and further relief as this Court deems just and proper.


Dated:    August 16, 2023
          Buffalo, New York

                              **RUPP PFALZGRAF LLC**
                              *Attorneys for Plaintiffs*


                              James J. Graber, Esq.
                              Chad A. Davenport, Esq.
                              1600 Liberty Building
                              Buffalo, New York  14202
                              (716) 854-3400
                              Graber@RuppPfalzgraf.com
                              Davenport@RuppPfalzgraf.com

## **VERIFICATION**

STATE OF NEW YORK    )
                             : ss.:

COUNTY OF ERIE        )

        Patricia A. Frentzel, being duly sworn, deposes and says that she is a plaintiff named in the within entitled action; that she has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters she believes them to be true.

                                        Patricia A. Frentzel, Plaintiff

Sworn to before me this _16th_
day of August, 2023.

Notary Public

KRISTIN L. OCHS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01OC0003521
Qualified in Erie County
Commission Expires March 24, 2027

1

## **VERIFICATION**

STATE OF NEW YORK          )
                          : ss.:
COUNTY OF ERIE             )


       Nancy J. Anderson, being duly sworn, deposes and says that she is a plaintiff named in the within entitled action; that she has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters she believes them to be true.



                                                 _____
                                               Nancy J. Anderson, Plaintiff


Sworn to before me this _16th_
day of August, 2023.

_____
Notary Public

```
KRISTIN L. OCHS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01OC0003521
Qualified in Erie County
Commission Expires March 24, 2027
```

2

## **VERIFICATION**

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF ERIE       )

      Wendy A. Valint, being duly sworn, deposes and says that she is a plaintiff named

in the within entitled action; that she has read the foregoing Verified Complaint and knows the

contents thereof; and that the same is true to her own knowledge, except as to those matters

therein stated to be alleged upon information and belief, and as to those matters she believes

them to be true.

                            _____
                            Wendy A. Valint, Plaintiff

Sworn to before me this _16th_
day of August, 2023.

_____
Notary Public

KRISTIN L. OCHS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01OC0003521
Qualified in Erie County
Commission Expires March 24, 2027

3

## **VERIFICATION**

STATE OF NEW YORK )
                              : ss.:
COUNTY OF ERIE )

        Evan J. Valint, being duly sworn, deposes and says that he is a plaintiff named in the within entitled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.

                                                           Evan J. Valint, Plaintiff

Sworn to before me this _16th_
day of August, 2023.

Notary Public

KRISTIN L. OCHS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01OC0003521
Qualified in Erie County
Commission Expires March 24, 20_27_

4

## **VERIFICATION**

STATE OF NEW YORK          )
                           :  ss.:
COUNTY OF ERIE             )


      Scott M. Henderson, being duly sworn, deposes and says that he is a plaintiff named in the within entitled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.


                                         _____
                                         Scott M. Henderson, Plaintiff


Sworn to before me this ____16ᵗʰ____
day of August, 2023.

Notary Public

KRISTIN L. OCHS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01OC0003521
Qualified in Erie County
Commission Expires March 24, 2027

5

**VERIFICATION**

STATE OF NEW YORK )
                          : ss.:
COUNTY OF ERIE )

        Cathy A. Henderson, being duly sworn, deposes and says that she is a plaintiff named in the within entitled action; that she has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters she believes them to be true.

_____
Cathy A. Henderson, Plaintiff

Sworn to before me this _16th_
day of August, 2023.

_____
Notary Public

KRISTIN L. OCHS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01OC0003521
Qualified in Erie County
Commission Expires March 24, 2027

6

## VERIFICATION

STATE OF NEW YORK     )
: ss.:
COUNTY OF ERIE      )

       Erik J. Anderson, being duly sworn, deposes and says that he is a plaintiff named

in the within entitled action; that he has read the foregoing Verified Complaint and knows the

contents thereof; and that the same is true to his own knowledge, except as to those matters

therein stated to be alleged upon information and belief, and as to those matters he believes them

to be true.

_____
Erik J. Anderson, Plaintiff

Sworn to before me this _16th_
day of August, 2023.

_Kristin L. Ochs_
Notary Public

```
KRISTIN L. OCHS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01OC0003521
Qualified in Erie County
Commission Expires March 24, 2027
```