**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
————————————————————

PATRICIA A. FRENTZEL, NANCY J. ANDERSON,
WENDY A. VALINT, EVAN J. VALINT, SCOTT
M. HENDERSON, CATHY A. HENDERSON,
AND ERIK J. ANDERSON

      **Plaintiffs,**                        **23-CV-00854-JLS-HKS**

  **vs.**

RALPH M. MOHR, JEREMY J. ZELLNER, ERIE
COUNTY BOARD OF ELECTIONS, GEORGE
M. HAUSS, ROGER A. COOK, LETITIA JAMES,
KATHY HOLCHUL, PETER S. KOSINSKI,
DOUGLAS A. KELLNER, ANDREW J. SPANO,
ANTHONY J. CASALE, AND NEW YORK STATE
BOARD OF ELECTIONS,

      **Defendants.**
————————————————————


## REPORT, RECOMMENDATION AND ORDER

      This case was referred to the undersigned by the Hon. John L. Sinatra, Jr.,

pursuant to 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon

dispositive motions. Dkt. #43.

      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 challenging

the constitutionality of New York Election Law § 8-308(4) ("§ 8-308(4)"). Dkt. #1.

Currently before the Court are plaintiffs' motion for summary judgment (Dkt. #47) and a cross-motion for summary judgment by state defendants Kathy Holchul and Leticia James ("State defendants".)[1]

## BACKGROUND

### *Factual Background*

Because the constitutionality of § 8-308(4) must be evaluated in the context of New York's entire voting system, the Court will first review relevant aspects of that scheme. *See Gottlieb v. Lamont*, 22-449, 2023 WL 2879305, at *2 (2d Cir. April 11, 2023) (a court reviewing an alleged unconstitutional burden imposed by a state election law must consider the burden "not. . .in isolation, but within the context of the state's overall scheme of election regulations") (quoting *Lerman v. Bd. of Elections N.Y.C.*, 232 F.3d 135, 145 (2d Cir. 2000)).

### New York's Election Scheme

In New York, a voter may only vote in a primary election of the party of which the voter is a member, which is known as a "closed" primary. New York Election Law § 8-302(4); Dkt. #18-3, p. 17. In addition, only candidates who are members of a particular party may generally run in that party's primary. New York Election Law § 6-120(1).

---

[1] The New York State Board of Elections and its named defendant officers filed a "letter of no position" as to these motions. Dkt. #46. Also, while the Erie County Board of Elections ("ECBOE") and its named defendant officials have not filed briefs related to the current motions, defendant Ralph M. Mohr ("Mohr"), an ECBOE commissioner, testified at the preliminary injunction hearing in support of plaintiffs' position, Dkt. #37, pp. 16-17, 24-26, and he submitted a declaration in support of plaintiffs' motion for summary judgment. Dkt. #47-5.

However, a non-member may seek from the party committee a "certificate of authorization" to allow him or her to run in that party's primary. New York Election Law § 6-120(3). This is known as "Wilson-Pakula" authorization. *See Brookhaven Town Conservative Comm. v. Walsh*, No. 14-CV-6097 (JFB)(ARL), 2016 WL 1171583, at *1 (E.D.N.Y. Mar. 23, 2016) ("Wilson-Pakula authorization is an authorization given by a political party to a candidate for public office in New York that allows a candidate not registered with that party to run as its candidate in a given election.").

New York law also provides that if multiple candidates secure a place on the ballot for a particular office, the party will hold a primary election to determine who will be the party's nominee. New York Election Law § 6-160(1). A primary ballot lists the names of designated candidates, and it also includes a place for write-in votes. New York Election Law § 7-104(3)(c).

If only one candidate is designated for an open office or position, it is deemed uncontested, and no primary is typically held. *Id.* § 6-160(2). However, members of a political party may file a petition with the local board of elections—called an "opportunity to ballot" petition—requesting to write in the name of a candidate for an otherwise uncontested position, and a primary will then be held. New York Election Law § 6-164.

In addition, New York permits "fusion" voting, whereby candidates may receive nominations from more than one party or independent body and then appear on the general election ballot on multiple party lines. New York Election Law § 7-104(4).

New York voters may also change their party enrollment. Prior to September 26, 2019, a voter's change in his or her party enrollment after January 1 was not effective until seven days after the November general election, thus rendering them unable to vote in the party's primary until the following year. 2019 N.Y. Sess. Laws Ch. 316 (S. 6532-A) (McKinney's). In 2019, however, Election Law § 5-304 was amended to make changes in party enrollment effective immediately so long as the change was received by the board of elections by February 14. *Id.* § 5-304(3).

Finally, New York law contains procedures through which the chairman of the county committee of a political party may expel a party member if the chairman determines that "the voter is not in sympathy with the principles of the party." New York Election Law § 16-110(2).

### Election Law § 8-308(4)

In 2021, the New York State legislature passed legislation to prevent non-party-member candidates from winning a party's nomination in a primary election through write-in votes. Dkt. #18-2.

Specifically, § 6-164—the "opportunity to ballot" provision—was amended to provide that a petition requesting the opportunity to write in a candidate's name in an otherwise uncontested primary election must be for a member of such party. *Id.* at p. 3.

Second, § 8-308(4) was added. That provision states that a "write-in ballot cast in a party primary for a candidate not enrolled in such party shall be void and not counted." *Id.* at p. 4.

The legislative history of § 8-308(4) indicates that it was enacted with the purpose of preventing "party raiding," *i.e.*, where voters from one party switch to another party to influence the outcome of the second party's primary. Dkt. #47-6, ¶ 16. The stated justification for this change was: "Parties should control access to their primary ballot. Non-party members should not be permitted to participate in a primary without the party's authorization." Dkt. #18-2, p. 5.  The bill's sponsor also observed that "we're finding more and more people are changing parties for the purpose of sabotaging the. . .other political party." *Id.* at p. 7.

### The Primary Election at Issue in this Matter[2]

Plaintiffs Nancy J. Anderson, Wendy A. Valint, Evan J. Valint, Scott M. Henderson, Cathy A. Henderson, and Erik J. Anderson ("the Voter Plaintiffs") are registered voters in New York State and enrolled members of the Working Families Party ("WFP"). Dkt. #46-6, ¶ 1.

---

[2] Unless otherwise noted, the following facts are drawn from the parties' Rule 56 Statements of Material Facts and are admitted.

Plaintiff Patricia A. Frentzel ("Frentzel") is the incumbent Town Clerk in Grand Island, New York and is a member of the Republican Party. She won re-election to that office in the November 7, 2023 general election, with 73% of the vote. Dkt. #47-6, ¶ 2; Dkt. #48-1, ¶ 1.

On June 27, 2023, the WFP held a primary election to select its nominee for Grand Island Town Clerk for the upcoming general election. Dkt. #47-6, ¶ 3. As a Republican, Frentzel could appear on the primary ballot of the WFP only if she received a certificate of authorization from the WFP under the Wilson-Pakula Law. Frentzel did not seek such a certificate. Dkt. #48-1, ¶ 2.

George Hauss ("Hauss"), a member of the Democratic Party who had purportedly received a Wilson-Pakula certificate from the WFP, filed a designating petition to appear on the WFP primary ballot for the position of Grand Island Town Clerk. He was the only candidate to do so. Dkt. #48-1, ¶ 2. It was later determined that Hauss did not, in fact, obtain a valid Wilson-Pakula authorization from the WFP for purposes of the primary election. Dkt. #47-6, ¶ 5.

However, an opportunity-to-ballot petition was later filed, which sought the opportunity to write in the name of an unspecified candidate in the WFP primary election for Town Clerk. Thus, what would have been an uncontested race became contested, and a primary election was held to determine who would receive the WFP nomination for

Grand Island Town Clerk. Dkt. #48-1, ¶ 4.

Despite the invalidity of Hauss's petition, his name was the only candidate's name printed on the WFP primary ballot, along with the write-in option. Voters accordingly had the option of voting for Hauss or writing in the name of another candidate. Dkt. #47-6, ¶ 6; Dkt. #48-1, ¶ 5.

The Voter Plaintiffs each cast write-in votes for Frentzel, who they believed would best represent the WFP's principles and values if elected Town Clerk. Dkt. #47-6, ¶ 4.

In the primary, Hauss received three votes, Frentzel received twelve write-in votes, and someone named Roger Cook received one write-in vote. Dkt. #47-6, ¶ 7; Dkt. #48-1, ¶ 5. However, because Frentzel is not a member of the WFP, the write-in votes in her favor were voided pursuant to § 8-308(4), and Hauss was declared the winner. Dkt. #47-6, ¶ 8; Dkt. #48-1, ¶ 6.

Frentzel thus did not appear on the general election ballot as the WFP nominee. Dkt. #47-6, ¶ 9; Dkt. #48-1, ¶ 6. However, Frentzel remained the candidate of the Republican Party (as well as the Conservative Party), and she won re-election as Town Clerk. *Id.*

### *Procedural Background*

On August 18, 2023, plaintiffs filed this action, alleging the following causes of action: (1) violation of the First and Fourteenth Amendments to the U.S. Constitution (Freedom of Association), pursuant to 42 U.S.C. § 1983; (2) violation of the First and Fourteenth Amendments (Freedom of Speech), pursuant to 42 U.S.C. § 1983; (3) violation of the Fourteenth Amendment (Equal Protection), pursuant to 42 U.S.C. § 1983; (4) violation of the Fourteenth Amendment (Due Process), pursuant to 42 U.S.C. § 1983; and (5) violation of the First and Fourteenth Amendments (Fundamental Right to Vote), pursuant to 42 U.S.C. § 1983. Dkt. #1.

Plaintiffs also filed a motion for a preliminary injunction. Dkt. #2. Plaintiffs sought an order restraining defendants from enforcing § 8-308(4) and directing the ECBOE to count, canvass, and tally the write-in primary votes for Frentzel. Dkt. #2, p. 2. In the alternative, plaintiffs sought an injunction restraining defendants from certifying Hauss as the winner of the June 27, 2023 primary for the WFP and the party's nominee for the position of Grand Island's Town Clerk. *Id.*

Plaintiffs also sought a declaratory judgment that § 8-308(4) is unconstitutional as a matter of law or, in the alternative, that certification of Hauss as winner of the primary for the WFP for the position of Town Clerk was unconstitutional as a matter of law. *Id.*

Judge John L. Sinatra, Jr. heard oral arguments on plaintiffs' motions on September 12, 2023. Dkt. #31. Thereafter, the Court denied plaintiffs' motion for an injunction restraining defendants from enforcing § 8-308(4) and directing the ECBOE to count, canvass, and tally the write-in votes for Frentzel. Dkt. ##31, 32. However, the Court granted the plaintiffs' motion to restrain defendants from certifying Hauss as the winner of the June 27, 2023 primary election for the WFP on the grounds that such action likely violated Frentzel's right to equal protection. *Id.*; Dkt. #37, p. 72.[3]

On September 21, 2023, plaintiffs filed an interlocutory appeal from this ruling. Dkt. #33. On April 29, 2024, the United States Court of Appeals for the Second Circuit, by summary order, issued a mandate dismissing the appeal as moot. Dkt. #39. The Court reasoned that the conclusion of the WFP primary made it impossible for the Court to grant relief as to plaintiffs' as-applied challenge. Dkt. #33, p. 3. Finally, the Court noted that, while a facial challenge to the constitutionality of an election law— encompassed in plaintiffs' request for declaratory relief—is not mooted on such facts, the District Court had yet to issue a final judgment as to that relief. Dkt. #39, p. 4.[4]

Thereafter, this Court set a briefing schedule, and the instant motions followed.

---

[3] These rulings were entered by text order, and the Court stated that the transcript of the hearing would constitute the written decision of the Court. Dkt. #31. That transcript is found at Dkt. #37.

[4] Plaintiffs and the State Defendants agree with the Court of Appeals' observation that plaintiffs' request for declaratory relief as to the constitutionality of § 8-308(4) is not moot. Dkt. #48-5, p. 6 n.2; Dkt. #50, p. 19.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment

> must do more than make broad factual
> allegations and invoke the appropriate statute.

> The [party] must also show, by affidavits or as
> otherwise provided in Rule 56 of the Federal
> Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

### **Cross-Motions for Summary Judgment**[5]

#### ***Analytical Framework***

Plaintiffs' opening contention is that § 8-308(4) must be examined under the lens of strict scrutiny. Dkt. #47-7, p. 9. This is incorrect. *See Burdick v. Takushi*, 504 U.S. 428, 432 (1992) ("Petitioner proceeds from the erroneous assumption that a law that imposes any burden upon the right to vote must be subject to strict scrutiny. Our cases do not so hold.").

Rather, while the Supreme Court in *Burdick* recognized that "voting is of the most fundamental significance under our constitutional structure," it emphasized that it does not follow "that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id.* at 433 (citations and internal quotation marks omitted).

The Court observed that the United States Constitution provides that the states shall prescribe the times, places, and manner of electing senators and representatives, and that "States retain the power to regulate their own elections." *Id.*

---

[5] The parties' motions do not address Frentzel's equal protection claim based on Hauss's certification as the winner of the WFP 2023 primary, on which Frentzel prevailed at the preliminary injunction stage. The Court assumes that is because the claim is now moot.

Further, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'" *Id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

The Court further reasoned that because "[e]lection laws will invariably impose some burden on voters," subjecting every such law to strict scrutiny "would tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Id.*

Thus, the Court explained that "a more flexible standard applies," that is, a balancing test: "A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.* (citations and internal quotation marks omitted).

Under this test, the degree of scrutiny depends on the extent to which the challenged regulation burdens the First and Fourteenth Amendment Rights. *Id.* When those rights are subjected to "severe" restrictions, the regulation "must be narrowly drawn to advance a state interest of compelling importance." *Id.*

However, when such a law imposes only "reasonable, nondiscriminatory restrictions. . ., the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.*

"Review in such circumstances will be quite deferential, and [the Court] will not require elaborate, empirical verification of the weightiness of the State's asserted justifications." *Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020) (citations and internal quotation marks omitted).[6]

### Severity of the Burden

"To determine whether a challenged provision places a severe burden on a plaintiff's First or Fourteenth Amendment rights, courts consider the alleged burden imposed by the challenged provision in light of the state's overall election scheme." *SAM Party of New York v. Kosinski*, 576 F. Supp.3d 151, 164 (S.D.N.Y. 2021) (citation and internal quotation marks omitted).

The Court of Appeals has noted that the "hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Lamont*, 977 F.3d at 177 (citation and internal quotation marks omitted). *See also Burdick*, 504 U.S. at 435 (regulation would constitute severe burden on voters' rights if it unreasonably interfered with having candidates of their choice from being placed on the ballot).

---

[6] This analysis applies to claims based on both voting rights and ballot access because "the rights of voters and the rights of candidates do not lend themselves to neat separation." *Burdick*, 504 U.S. at 438 (citation and internal quotation marks omitted).

Having reviewed this and other relevant authority, the Court agrees with Judge Sinatra's determination at the preliminary injunction stage of this matter that § 8-308(4) does not impose a severe burden on plaintiffs' rights under the First and Fourteenth Amendments. Dkt. #37, p. 69.

Several Supreme Court cases are instructive. For example, in *Clingman v. Beaver*, 544 U.S. 581 (2005), the Court considered a challenge to Oklahoma's semi-closed primary system in which political parties were permitted to invite only members of their own parties and voters registered as Independents to vote in their primary elections. *Id.* at 584. The Oklahoma Libertarian Party ("LPO")—who wished to allow non-LPO voters, other than Independents, to vote in its primaries—and several Republican and Democratic voters alleged that this system unconstitutionally burdened their First Amendment rights to freedom of political association. *Id.* at 585.

The Supreme Court held that the burden imposed by this system was not "severe." First, the Court noted that the law did not prevent the LPO from engaging "in the same electoral activities as every other political party in Oklahoma." *Id.* at 587. Rather, "Oklahoma merely prohibits the LPO from leaving the selection of its candidates to people who are members of another political party." *Id.* at 587-88.

Importantly, the Court noted that nothing in Oklahoma's election scheme prevented members of other parties from switching their voter registration to the LPO or

to Independent status, which would render them eligible to vote in the LPO's primary elections. *Id.* at 588.

The Court also noted that non-LPO voters, such as Republicans and Democrats, who do not wish to switch their registration to the LPO do not want to "associate" with the LPO in the constitutional sense—they merely want to vote in a particular primary. *Id.*

The Court also noted that the burden on voters was not severe because disaffiliation in Oklahoma was a simple process, and if voters did not wish to join the LPO, they could simply register as an Independent. *Id.* at 590-592.

In reaching this conclusion, the Court noted that Oklahoma's semi-closed primary system posed a lesser burden than the restriction the Court held was non-severe in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997). *Id.* at 589-590.

In *Timmons*, a minor political party challenged the constitutionality of Minnesota's "antifusion" laws prohibiting a candidate from appearing on the ballot as the candidate for more than one party. The Court held that this restriction "does not severely burden the second party's associational rights." *Id.* at 359.

The Court noted that the antifusion laws did not regulate the party's internal affairs or core associational activities, nor did they directly preclude minor political parties

from developing and organizing. *Id.* at 360. Further, the second party "remains free to endorse whom it likes, to ally itself with others, to nominate candidates for office, and to spread its message to all who will listen." *Id.*

Importantly, the Court rejected the minor party's argument that the antifusion laws prevented it from sending a message about its support for a particular candidate: "Ballots serve primarily to elect candidates, not as forums for political expression." *Id.* at 363 (citing *Burdick*, 504 U.S. at 438).

In fact, *Burdick* upheld a write-in prohibition broader than the law at issue in this matter. There, Hawaii had a blanket prohibition against write-in voting, and the plaintiff alleged that the law unreasonably infringed his rights under the First and Fourteenth Amendments. *Burdick*, 504 U.S. at 430.

The Court reviewed Hawaii's electoral system, noting that it provided three separate ways for a voter's candidate of choice to appear on a primary ballot in the state. *Id.* at 435-436. Given these other avenues for ballot access, the Court held that the lack of a write-in option posed a "very limited" burden on voters' constitutional rights. *Id.*

Authority within the Second Circuit also supports the conclusion that the burden alleged by plaintiffs is not "severe." *See, e.g., Libertarian Party of Conn. v. Lamont*, 977 F.3d 173, 179 (2d Cir. 2020) (holding that ballot access law requiring candidates to gather a certain number of signatures to appear on general election ballot did not impose

a "severe" burden on candidates' First and Fourteenth Amendment Rights); *Maslow v. Bd. of Elections*, 658 F.3d 291, 297-98 (2d Cir. 2011) (rejecting challenge to law that required persons circulating petitions to get candidate on party's primary ballot to be members of that party; political parties have a First Amendment right to exclude non-members from party functions, candidates had ample access to ballot in both primary and general elections, and challenged rule did not substantially restrict access to primary ballot).[7]

Defendants assert, and plaintiffs do not dispute, that notwithstanding § 8-308(4), there are other ways for candidates to gain ballot access in a party's primary and in the general election. Dkt. #48-5, pp. 14-15. As noted above, a non-party member may gain access to a party's primary ballot by obtaining a Wilson-Pakula certificate from the party, or she could register to become a member of the party.

There are also three avenues for access to the general election ballot. Dkt. #48-5, p. 15. As defendants point out, Frentzel availed herself of one of those avenues by gaining the nominations of both the Republican and Conservative parties, and she won re-election as Town Clerk. Dkt. #47-6, ¶ 9; Dkt. #48-1, ¶ 6.[8]

---

[7] Plaintiffs' reliance on *Lerman v. Bd. of Election*, 232 F.3d 135 (2d Cir. 2000), is inapposite. The law challenged there required that witnesses for designating petition signatures be residents of the political subdivision in which the candidate was running for office. *Id.* at 138. The Court held that the regulation significantly burdened the petition circulation activity— which was core political speech—by drastically limiting the number of persons available to circulate petitions, and the law was thus subject to strict scrutiny. *Id.* at 146-149.

[8] A New York state court, considering a challenge to § 8-308(4) under the New York constitution, also found—applying many of the federal cases cited herein—that the law imposed only a limited burden on voters' rights. *In the Matter of Kowal*, 216 A.D.3d 1472, 1475 (N.Y. App. Div. 4th Dep't

***Additional Claim-Specific Issues***

The Court makes a few additional observations regarding plaintiffs' specific causes of action.

With respect to plaintiffs' free association claims, the Court in *Maslow* held that a political party's "strong" associational right to exclude non-members from their candidate nomination process "forecloses the possibility that non-party members have an independent First Amendment right to participate in party affairs." *Maslow*, 658 F.3d at 296. *See also Clingman*, 544 U.S. at 588 (rejecting freedom of association claim by non-party-member voters who were prohibited by state law from voting in party's primary).[9]

Next, plaintiffs argue that § 8-308(4) burdens their "core political speech." Dkt. #47-7, pp. 14-15. This argument is flawed.

"[N]ot all political speech rises to the level of 'core political speech.'" *Walden v. Kosinski*, 25-cv-0072 (LDH) (TAM), 2025 WL 1017531, at *6 (E.D.N.Y. April 5, 2025). As the Supreme Court observed in *Timmons*, "[b]allots serve primarily to elect candidates, not as forums for political expression." 520 U.S. at 363 (citation omitted). The ballot restriction here thus does not burden core political speech.

---

2023). While that decision is not binding on this Court, it is notable that the court also cited these alternative ballot access avenues in support of its conclusion.

[9] Plaintiffs' reliance on *Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986) and *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 479 U.S. 214 (1989), is misplaced. As the Supreme Court noted in *Timmons*, those cases "involved regulation of political parties' internal affairs and core associational activities." *Timmons*, 520 U.S. at 360. The law challenged here does not restrict such activities.

As to plaintiffs' equal protection claim, they have not shown that they have been treated differently under the law than similarly situated individuals. *See Deutsh v. N.Y. State Bd. of Elections*, 20 Civ. 8929 (LGS), 2020 WL 6384064, at *6 (S.D.N.Y. Oct. 30, 2020) (rejecting equal protection claim based on ballot application deadline where deadline was applied in same manner to both email and conventional mail applicants).

Plaintiffs argue that due to unique characteristics of the WFP and the interplay between the Wilson-Pakula authorization and § 8-308(4), there results a concentration of electoral power in the hands of WFP party bosses at the expense of rank-and-file members. Dkt. #47-7, p. 15.

However, it is not disputed that § 8-308(4) applies equally to all political party primaries in New York, and plaintiffs have adduced no evidence that the law targeted them or the WFP. Their equal protection claim thus fails. *See Walden*, 2025 WL 1017531, at *3, n. 3 ("[G]iven that the Independence Ban applies to all Parties and independent bodies indiscriminately, the Court is skeptical about Plaintiff's likelihood of success on the Fourteenth Amendment Equal Protection claim.").

Plaintiffs' due process claim, alleging that § 8-308(4) "retroactively" nullifies their write-in votes, also fails. This law became effective on October 8, 2021, Dkt. #18-2, p. 3, and it had been on the books for nearly two years at the time of the WFP primary in 2023. All primary voters were then subject to the law's prohibition against counting write-

in votes for non-party members. Plaintiffs' characterization of the voiding of their write-in votes for Frentzel as "retroactive" is thus inaccurate.

Finally, plaintiffs' right-to-vote claim—also premised on alleged retroactive disenfranchisement, Dkt. #47-7, pp. 16-17—cannot succeed. As previously discussed, the Supreme Court upheld a complete ban on write-in votes in *Burdick*, a greater restriction than that created by § 8-308(4).

### *The State's Interests*

Having found that § 8-308(4) does not impose a severe burden on plaintiffs' First and Fourteenth Amendment rights, "the Court need only evaluate whether 'the State's important regulatory interests are. . .sufficient to justify' the restriction. *Walden*, 2025 WL 1017531, at *8 (quoting *Burdick*, 504 U.S. at 434).

As discussed above, the legislative history of § 8-308(4) indicates that it was enacted with the purpose of preventing "party raiding," or "the organized switching of blocs of voters from one party to another in order to manipulate the outcome of the other party's primary election." *Clingman*, 544 U.S. at 596 (citations and internal quotation marks omitted).

Courts have repeatedly held that preventing party raiding is a sufficient state interest to justify reasonable, non-severe election restrictions. *See Clingman*, 544 U.S. at 596; *Burdick*, 504 U.S. at 439-440; *Anderson v. Celebrezze*, 460 U.S. 780, 788, n.9 (1983); *Maslow*, 658 F.3d at 298.

Plaintiffs do not dispute this authority, but they argue that there are less burdensome alternatives to prevent party raiding. Dkt. #47-7, pp. 17-18. However, a state "may pursue multiple avenues to achieve its stated goals, . . .and the State need not pursue the least restrictive means available." *SAM Party of New York v. Kosinski*, 576 F.Supp.3d 151, 169-70 (S.D.N.Y. Dec. 22, 2021) (citation and internal quotation marks omitted).

Plaintiffs also argue that defendants have produced no evidence of party raiding to substantiate their stated interest. Dkt. #47-7, p. 17. This argument fails for two reasons.

First, where the challenged law does not impose a severe burden, courts do not "require elaborate, empirical verification of the weightiness of the State's asserted justifications." *Timmons*, 520 U.S. at 364. *See also SAM Party*, 576 F. Supp.3d at 169 (same).

Second, as set forth in defendants' cross-motion for summary judgment, Dkt. #48-5, pp. 25-27, the record does contain evidence of attempted, and even successful, party raiding in New York counties and towns.

Therefore, it will be recommended that plaintiffs' claims fail as a matter of law and that no triable issues exist.

**CONCLUSION**

For the foregoing reasons, it is recommended that plaintiffs' motion for summary judgment be denied and defendants' motion for summary judgment be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed .R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
                 April 24, 2025

<u>**s/ H. Kenneth Schroeder, Jr.**</u>
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**